# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-03902 MMM (SSx) | Date | December 9, 2010 |

| | |
|---|---|
| Title | *Maury Microwave, Inc. v. Focus Microwaves, Inc.* |

| | |
|---|---|
| Present: The Honorable | MARGARET M. MORROW |

| | |
|---|---|
| ANEL HUERTA | N/A |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** Order to Show Cause Why Expert Witness Should Not Be Appointed by the Court

### I. FACTUAL BACKGROUND

On May 24, 2010, plaintiff Maury Microwave ("Maury") filed this action against defendant Focus Microwaves.[1] Plaintiff filed a first amended complaint on November 22, 2010.[2] The case involves three patents. Maury holds U.S. Patent No. 7,548,069 ("the '069 patent") protecting "Signal Measurement Systems and Methods," and contends that Focus has infringed this patent.[3] Focus holds U.S. Patent No. 6,674,293 ("the '293 patent") protecting a "Pre-Matched Tuner System and Method" and U.S. Patent No. 7,034,629 ("the' 629 patent") protecting "High Frequency, High Reflection Pre-Matching Tuners with Variable Zero Initialization."[4] Maury contends either that these

---

[1] Complaint, Docket No. 1 (May 24, 2010).

[2] First Amended Complaint, Docket No. 25 (Nov. 22, 2010).

[3] *Id.*, ¶ 1.

[4] *Id.*, ¶¶ 2-3.

patents are invalid, or that it has not infringed the patents.[5] The first amended complaint pleads five causes of action: (1) infringement of the '069 patent; (2) declaratory judgment of non-infringement of the '293 patent; (3) declaratory judgment of invalidity of the '293 patent; (4) declaratory judgment of non-infringement of the '629 patent; and (5) declaratory judgment of invalidity of the '629 patent.[6]

## II. RULE 34 INSPECTION REPORT

At the center of the parties' dispute is a single microwave tuner; specifically, model MT982M (the "Maury device"), which Maury has manufactured and offers for sale. On December 6, 2010, the parties filed a joint Rule 34 inspection status report.[7] They explain that there is only one Maury device in existence, and that Focus seeks inspection of that device to determine whether the device infringes its patents.[8] To evaluate that question, Focus seeks to disassemble some portion of the Maury device.[9] Maury objects to disassembly beyond removal of the device's "removable cover," because "[a]ny disassembly beyond removing the cover would alter the only embodiment of the Maury Device in existence, would damage that embodiment, and would not yield information relevant to a claim or defense of any party."[10]

The two issues about which the parties disagree are (1) the removal of an optical limit switch from the accused device, and (2) the use of control equipment to operate the tuner device that is different from the control equipment Maury provides.[11]

As respects the removal of the optical switch, Focus contends that "because Plaintiff Maury bases its non-infringement allegations on the suggestion that the Maury device always maintains a gap between its two most significant components (a gap that is on the order of half the width of a human hair), Focus is entitled to measure, inspect and test the integrity, tolerances, and limits of the components in the Maury device alleged to effectively maintain that gap."[12] Maury counters that "Focus says it can measure th[e] gap with a dialer measuring instrument. That measurement should

---

[5]*Id.*

[6]*Id.* at 1.

[7]Report of Status of Rule 34 Inspection, Docket No. 24 (Dec. 6, 2010).

[8]*Id.* at 2.

[9]*Id.*

[10]*Id.*

[11]*Id.* at 3.

[12]*Id.* at 4.

suffice to confirm that th[e] gap exists and that the Maury Device is outside the scope of the claims of the '293 patent."[13]  It asserts, as a result, that no disassembly is required.[14]

     As respects operation of the Maury device with an alternative controller, Focus contends that "historically, purchasers of Maury tuners have not always chosen to purchase the Maury control hardware or software to control the tuners.  Rather, many customers have purchased Focus controllers and software to control their Maury tuners."[15]  Focus asserts that Maury has sought to avoid infringement "by writing control software for the Maury Device that maintains a gap between the relevant components in response to a signal from an optical limit switch.  Focus believes that this 'design around' effort is ineffective if the customer chooses to operate the Maury device with non-Maury control equipment."[16]  As a result, Focus maintains, "it is entitled to inspect and test the Maury Device with any control equipment that can be plugged into its jack and accommodated by the Maury Device."  It contends that "nothing about this proposed operation will damage the Maury tuner."[17]  Maury counters that "this operation would alter the only embodiment of the Maury Device in existence, might damage that embodiment, and would not yield information relevant to a claim or defense of any party."[18]  Specifically, Maury asserts that Focus's proposed test is entirely irrelevant to any infringement theory because, once Focus operates the device with its own controller, it is no longer a Maury product; specifically, Maury contends that, without its own controller hardware and software, the Maury device is just a dumb box:[19] "Focus proposes to turn this box into Frankenstein's Monster—removing one set of brains (Maury's controller hardware and software, which is sold as part of the Maury Device) and inserting a new set of brains (Focus' iConverter hardware and software).  Just like Frankenstein's Monster, the Maury Device with the Focus iConverter is no longer the Maury Device."[20]

     The parties represent that they are unable to resolve the dispute, and urge the court to "take[ ] up. . .these matters" before the parties' Rule 34 inspection – currently scheduled for December 13, 2010 – to avoid needless delay and expense.

---

[13]*Id.* at 4-5.

[14]*Id.*

[15]*Id.* at 5.

[16]*Id.*

[17]*Id.* at 5-6.

[18]*Id.* at 6.

[19]*Id.* at 9.

[20]*Id.*

### III. DISCUSSION

Rule 706(a) of the Federal Rules of Evidence provides, in pertinent part, that "[t]he court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection." See also *Krause v. Whitley*, 985 F.2d 573 (Table), 1993 WL 22381, *2 (9th Cir. Feb. 2, 1993) (Unpub. Disp.) ("FRE 706 allows the district court to appoint a neutral expert on its own motion, whether or not the expert is agreed upon by the parties"); *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) ("The district court followed the dictates of Rule 706(a) by issuing an order to show cause why an expert should not be appointed, ordering briefing, holding a hearing and then appointing an expert of its own selection").

The court's appointment of an expert witness is appropriate where the evidence before the court is "confusing and conflicting," "sufficiently complex," or where the evidence is "so complicated and difficult that an expert is required to present or prove the case." *Walker*, 180 F.3d at 1071; *Davis v. Burvant*, 112 F.3d 515 (Table), 1997 WL 199946, *2 (9th Cir. Apr. 23, 1997) (Unpub. Disp.); *Krause*, 1993 WL 22381 at *2. See also *Ass'n of Mexican-American Educators v. California*, 231 F.3d 572, 610 (9th Cir. 2000) ("Although the use of a technical advisor should be 'the exception and not the rule,' expert advice can be quite useful in a trial that involves unusually complex issues in fields 'beyond the regular questions of fact and law with which judges must routinely grapple.' Moreover, because the district court is in a better position to decide if the appointment of a technical advisor is warranted, we should defer to its discretion with respect to whether or not to appoint one," citing *Reilly v. United States*, 863 F.2d 149, 156-57 (1st Cir. 1988).

In this case, the court is unable to determined from the parties' report whether disassembly of the Maury device is necessary or whether, as Maury contends, "[a]ny disassembly beyond removing the cover would alter the only embodiment of the Maury Device in existence, would damage that embodiment, and would not yield information relevant to a claim or defense of any party."[21] Nor is the court able to determine whether the alternative inspection methods Maury suggests would suffice to provide the information Focus is entitled to discover. The court is likewise unable to discern whether plugging non-Maury control equipment into the Maury device "will damage the Maury tuner,"[22] or whether "nothing about [such an] operation [would] damage the Maury tuner."[23]

### IV. CONCLUSION

---

[21]*Id.* at 2.

[22]*Id.* at 5-6.

[23]*Id.*

The court therefore orders the parties to show cause on or before **December 15, 2010** why an expert should not be appointed to aid the court in determining the proper resolution of this issue. The court further directs the parties to propose an expert or experts for the court's consideration.[24] Pending resolution of this question, the court directs the parties to postpone the inspection set for December 13, 2010.

---

[24] See FED.R.EVID 706(a) ("The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. . .").